# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**DAVID I. BLASKO,**

       **Plaintiff,**              **CIVIL ACTION NO. 09-13471**

       **vs.**                      **DISTRICT JUDGE THOMAS L. LUDINGTON**

**COMMISSIONER OF**          **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

       **Defendant.**
_____/

## REPORT AND RECOMMENDATION

**I.    RECOMMENDATION:** This Court recommends that Defendant's Motion for Summary Judgment (docket no. 17) be **GRANTED**, Plaintiff's Motion for Summary Judgment (docket no. 14) be **DENIED**, and Plaintiff's Complaint be dismissed.

**II.    PROCEDURAL BACKGROUND**

Plaintiff protectively filed applications for period of Disability, Disability Insurance Benefits, and Supplemental Security Income on December 1, 2006, alleging that he had been disabled and unable to work since March 1, 2005 due to knee and hip problems and his inability to read and write. (TR 11, 74-76, 79-85, 138). The Social Security Administration denied benefits on April 5, 2007. (TR 50-58). A requested *de novo* hearing was held on May 14, 2008 before Administrative Law Judge (ALJ) Regina Sobrino who found that the claimant was not entitled to a period of Disability, Disability Insurance Benefits, or Supplemental Security Income because he was not under a disability from March 1, 2005 through the date of the ALJ's June 23, 2008 decision. (TR 11-18). The Appeals Council declined to review the ALJ's decision and Plaintiff commenced the instant

1

action for judicial review. (TR 1-4). The parties filed Motions for Summary Judgment and the issue for review is whether Defendant's denial of benefits was supported by substantial evidence on the record.

## III.   PLAINTIFF'S TESTIMONY, MEDICAL EVIDENCE AND VOCATIONAL EXPERT TESTIMONY

### A.   Plaintiff's Testimony and Reports

Plaintiff was thirty-two years old at the time of his filing. (TR 17). He is unmarried, has one minor child with whom he has no regular contact, and he alternates between living with his mother and with a friend. (TR 23, 80, 297). Plaintiff completed special education courses through the eleventh grade before he dropped out of school to help care for his ailing father. (TR 23, 208). He does not have a high school diploma or a GED. (TR 298). Plaintiff testified that he cannot read or write, cannot add or subtract, and cannot make correct change. (TR 24).

In April 1999 Plaintiff had a rod surgically implanted into his left femur following a motorcycle accident. (TR 196, 204). Plaintiff reported that as a result of the accident he experiences pain when he bends at the waist, he has trouble with stairs, and he cannot bend his knees and crouch. (TR 26). Plaintiff testified that he is able to walk approximately one block before needing a rest, stand approximately twenty to thirty minutes before needing to sit, and sit approximately thirty to forty minutes before needing to stand. (TR 25-26). He estimated that he can lift fifty pounds of weight. (TR 26). He stated that he has no difficulty reaching up and out, and he has no trouble holding a pen or pencil or picking up coins. (TR 26).

Plaintiff reported that he tries to help with household chores like washing dishes, vacuuming, light grocery shopping, and taking out the trash. (TR 27-28). He does not perform yard work. He is able to bathe and dress himself. Plaintiff testified that he gets anxious, nervous, and irritable when

surrounded by groups of people. (TR 30, 33). He stated that his friends and relatives visit him, and he also visits them if he gets a ride. Plaintiff is able to drive but he cannot read street signs or road maps. He does not belong to any clubs or organizations.

Plaintiff testified that he last worked from April to June 2006 at a construction company where he used a shovel all day, handled piping, and drove a bulldozer and dump truck. (TR 24, 116). He reported that he had to stop working because of pain in his hip. (TR 25).

Plaintiff's fiancee, Judene Rapson, testified at the hearing. (TR 35). She has known Plaintiff for two years. She characterized Plaintiff as forgetful, argumentative, and nervous. (TR 36-38). Ms. Rapson states that Plaintiff has a hard time staying on task, and claims that Plaintiff would have difficulty in a work setting because he rocks back and forth and shakes his leg. (TR 36). She testified that Plaintiff can relate to people in small one-one-one settings, but not in larger crowds.

**B.     Medical Record**

    **1.     Evidence of Physical Impairments**

The medical record reveals that Plaintiff discontinued physical therapy sessions after only one month following his April 1999 motorcycle accident. (TR 201-02). In December 2006 Plaintiff was examined by Dr. William C. Martin, his orthopedic surgeon, related to complaints of pain and discomfort in the lumbar spine and left hip region. (TR 203). Dr. Martin observed Plaintiff to walk without a limp. Plaintiff's hip range of motion was fairly normal. An x-ray of the femur showed that it had healed with no complications. (TR 203). An x-ray of the lumbrosacral spine showed degenerative changes leading to an impression of sciatica with possible hip irritation. (TR 203).

On February 28, 2007 Plaintiff was examined by Dr. Bret Bielawski at the request of the Social Security Administration. Plaintiff presented with complaints of left knee and hip pain. (TR

3

204). He reported that the pain was getting more severe, burning in the low back and left hip and lasting all day long. (TR 204). Plaintiff used two over-the-counter Tylenol every four hours for pain relief. (TR 204). Dr. Bielawski observed that the Plaintiff was in no obvious distress, had no difficulty getting on and off the examination table, walked with a normal gait with no difficulty heel and toe walking, and could pick up a coin, button clothing, and open a door. (TR 205-06). Plaintiff could only squat 30% of the way down. His left hip range of motion was significantly diminished. Dr. Bielawski concluded that the Plaintiff would benefit from physical therapy. (TR 206).

On March 28, 2007 Dr. Robert Nelson completed a Physical Residual Functional Capacity Assessment. (TR 238-45). Dr. Nelson concluded that Plaintiff can lift and carry up to twenty pounds occasionally and ten pounds frequently, stand and/or walk approximately six hours in an eight-hour workday, sit about six hours of an eight-hour workday and was limited in his lower extremities. (TR 239). Dr. Nelson concluded that Plaintiff's statements regarding his symptoms and abilities were inconsistent with the medical evidence of record and that he was only partially credible. (TR 242).

On September 5, 2007, Dr. Cesar Casten completed a medical examination report which states that Plaintiff can lift twenty-five pounds frequently and fifty pounds occasionally. Dr. Casten opined that Plaintiff can stand or walk less than two hours per workday, and sit less than six hours in a workday. He also found that Plaintiff could not use his hands or arms for simple grasping, reaching, pushing/pulling, or fine manipulation. (TR 308).

### 2. **Evidence of Mental Impairments**

Plaintiff's early school record reveals that he was placed in special education classes in elementary school and remained enrolled in special education courses through the eleventh grade.

4

(TR 179-188). On March 21, 2007 Plaintiff underwent a psychological examination with Dr. George Pestrue, Ph.D., from the Michigan Disability Determination Service. (TR 207-13). Dr. Pestrue noted that Plaintiff reported that he had one son by a former girlfriend and his relationship with his current girlfriend of one year was going well. (TR 208). The record shows that Plaintiff reported that he talked to his neighbors once in a while and he got along well with them. Plaintiff had one good friend with whom he played video games and threw a baseball. (TR 209). He claimed to enjoy camping, fishing, wood carving, and watching television. (TR 209). Plaintiff claimed to be a good cook and reported that he would usually make dinner at his girlfriend's place. (TR 209). Dr. Pestrue noted that Plaintiff reported that he would do chores, wash dishes, pay bills, or take his girlfriend to pay her bills. (TR 209).

Dr. Pestrue found that Plaintiff's stream of mental activity was passive and his responses were generally reasonable and logical. (TR 210). He concluded that Plaintiff exhibited a mildly depressed mood and he appeared to be severely anxious and tense. (TR 210). The results of Plaintiff's Wechsler Adult Intelligence Scale-III (WAIS-III) showed that Plaintiff received a Verbal IQ score of 73, a Performance IQ of 81, and a Full Scale IQ score of 75. A Wide Range Achievement Test (WRAT-3) was also administered and showed that Plaintiff scored in the first grade level in reading and spelling and at the third grade level in mathematics. Dr. Pestrue concluded that the Plaintiff's self-esteem was poor and his general motivation for life's usual activities was significantly limited. (TR 210). He diagnosed Plaintiff with a single mild episode of major depression, social anxiety disorder, developmental learning disorders, borderline intellectual functioning, and severe psychosocial stressors. (TR 212). He assigned a GAF score of 48 and concluded that Plaintiff was able to manage his own funds. (TR 212).

5

On March 27, 2007 Dr. Robert Newhouse completed a Mental Residual Functional Capacity Assessment and Psychiatric Review Technique. (TR 217-34). Dr. Newhouse found the presence of borderline intellectual functioning, a learning disorder, major depression, and social anxiety disorder. (TR 222, 224, 226). Under the "B Criteria of Listings," Plaintiff's functional limitations were deemed either moderate or mild, with no episodes of decompensation. (TR 231). The evidence did not establish the presence of "C" criteria. (TR 232). Dr. Newhouse concluded that Plaintiff was intellectually challenged, but that he retained the ability to do simple tasks on a sustained basis, and that he may function better in small familiar groups. (TR 219).

Plaintiff treated with psychiatrist Dr. Marina Bogdanovic on eight separate occasions from May 17, 2007 through February 8, 2008. (TR 246-56, 298-300). Dr. Bogdanovic diagnosed Plaintiff with attention deficit hyperactivity disorder ("ADHD"), major depression, mild social phobia, and a learning disorder. She assigned a GAF score of 50-55 and prescribed Paxil and Concerta for his social anxiety, depression, and ADHD. (TR 298-300). Over the course of treatment, Dr. Bogdanovic added borderline cognitive abilities as a diagnosis. (TR 246-56). She also changed her diagnosis of major depression to dysthymia, a chronic low-grade depression. (TR 250). Plaintiff was prescribed Klonopin, Strattera, Ritalin LA, Celexa, Trileptal, Depakote ER, Paxil and Restoril at various time throughout his treatment. (TR 246). The medical record shows that on several occasions Plaintiff discontinued his medications soon after they were begun, despite the fact that he reported improved concentration and decreased hyperactivity on medication. (TR 65).

On September 6, 2007 Dr. Bogdanovic completed a Mental Impairment Questionnaire on Plaintiff's behalf, finding that he exhibited significant ADHD and learning disorder difficulties, along with significant impulse control problems and dysphoric moods. (TR 68). Dr. Bogdanovic

6

opined that Plaintiff's abilities to maintain attention for two hour segments, complete a normal workweek without psychologically based interruptions, perform at a consistent pace without an unreasonable number of rest periods, and deal with normal work stress were "seriously limited but not precluded," and also were "unable to meet competitive standards." (TR 67). For the remaining twelve indicators of Plaintiff's ability to perform unskilled work, Dr. Bogdanovic concluded that Plaintiff was either "limited but satisfactory" or he was "seriously limited but not precluded." (TR 67). Dr. Bogdanovic further found that Plaintiff experienced marked limitations in maintaining concentration, persistence or pace, and one or two episodes of decompensation. Elsewhere on the form Dr. Bogdanovic noted that Plaintiff experienced three or more episodes of decompensation, and showed a history of being unable to function outside of a highly supportive living environment. (TR 69).

In September 2007, Dr. Cesar Casten, concluded that Plaintiff was limited in the areas of comprehension, sustained concentration, following simple directions, reading, writing, and social interaction. (TR 308).

### C. Vocational Expert

The Vocational Expert (VE) testified that Plaintiff's past work as a farm hand was heavy unskilled labor. (TR 38). Plaintiff's construction job was also unskilled work. (TR 39). The ALJ asked the VE to consider an individual who had completed the eleventh grade, but who was illiterate, who had arithmetic skills at the third grade level, and who had worked as a farm laborer, with the following limitations: (1) limited to light work, (2) restricted from climbing ladders, ropes, or scaffolds, and from kneeling, crouching, or crawling, (3) limited to occasional stooping and stair climbing, (4) restricted from operating controls with the left leg, (5) limited to simple routine

7

repetitive work that does not require the claimant to make independent judgments about work tasks, and (6) jobs requiring only superficial contact with co-workers and supervisors, do not include confrontation or negotiation, and have no contact with the general public. (TR 40-41).

The VE testified that such an individual could perform light unskilled work as a dishwasher, assembler, and janitor, which includes approximately 19,300 jobs in the lower Michigan region. (TR 41). If the individual was also limited to standing and walking for no more than two hours in an eight hour workday, such an individual could perform work at the sedentary level such as assembly jobs and inspector positions, comprising 3,200 jobs in the lower Michigan region.

The VE testified that if the claimant were not able to complete a normal workweek without psychologically based interruptions, and if he were unable to perform at a consistent pace without an unreasonable number of rest periods, the limitations would be work preclusive. (TR 43). The VE further testified that behavior such as vigorous rocking back and forth, or vigorous shaking and bouncing could be distracting to other workers. (TR 44-45). Finally, the VE agreed that if the claimant was unable to meet competitive standards of dealing with ordinary work stresses, that his condition would be work preclusive. The VE explained that her testimony regarding the jobs and their categorization was consistent with the Dictionary of Occupational Titles. (TR 42).

## IV. ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that although Plaintiff had not engaged in substantial gainful activity since March 1, 2005, met the insured status requirements through September 30, 2010, and suffered from borderline intellectual functioning, learning disorder, ADHD, depression, social phobia, and residuals of a femur fracture, all severe impairments, he did not have an impairment or combination of impairments that meets or medically equals the Listing of Impairments. (TR 13-14). The ALJ

concluded that Plaintiff has the residual functional capacity to perform a limited range of light work, but that he is unable to perform past relevant work. Because there are jobs that exist in significant numbers in the national economy, the ALJ found that Plaintiff is not under a disability as defined in the Social Security Act. (TR 18).

## V.     LAW AND ANALYSIS

### A.     Standard Of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review under this statute is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's decision employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases, resolve conflicts in the evidence or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite

conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

### B. Framework For Social Security Disability Determinations

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

1. he was not presently engaged in substantial gainful employment; and
2. he suffered from a severe impairment; and
3. the impairment met or was medically equal to a "listed impairment;" or
4. he did not have the residual functional capacity to perform his relevant past work.

*See* 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). If Plaintiff's impairments prevented him from doing his past work, the Commissioner, at step five, would consider his residual functional capacity ("RFC"), age, education and past work experience to determine if he could perform other work. If he could not, he would be deemed disabled. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (citation omitted). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

### C. Analysis

## 1. Whether the ALJ's Finding That Plaintiff Does Not Meet The Listing Is Supported By Substantial Evidence

Plaintiff argues that the ALJ's decision is not supported by substantial evidence in part because the ALJ failed to take into account the September 6, 2007 opinion of treating psychiatrist Dr. Bogdanovic that Plaintiff met the criteria for listing 12.02 (Organic Mental Disorders), 12.04 (Affective Disorders), and 12.06 (Anxiety-Related Disorders).

It is well-settled that the opinion of an examining source is entitled to greater weight than a non-examining source, and the opinion of a treating physician should be given more weight than that of a one-time examining doctor. 20 C.F.R. §§ 404.1527(d), 416.927(d); *Walters*, 127 F.3d at 529-30. The ALJ must give a treating physician's opinion complete deference if it is supported by clinical and laboratory diagnostic evidence and it is not inconsistent with the other substantial evidence in the record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The ALJ is not bound by a treating physician's opinion where there is substantial evidence to the contrary. *Loy v. Sec'y of Health and Human Serv.*, 901 F.2d 1306, 1308 (6th Cir. 1990) (citation omitted).

The elements of a mental disorder under listing 12.02, 12.04, and 12.06 include (1) a medically substantiated mental disorder; and (2) a marked limitation in at least two of the following impairment related functional limitations: restriction of activities of daily living; difficulties in maintaining social functioning; difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. 20 C.F.R. pt. 404, subpt. P, app. 1 §§ 12.02, 12.04, 12.06. Alternatively, under listing 12.02, 12.04, or 12.06 a claimant may satisfy the requirements of a listed mental impairment if he has a medically substantiated mental impairment and functional limitations that meet the "C" criteria of the listings.

The "C" criteria for listings 12.02 and 12.04 are identical, requiring a medically documented history of a mental impairment and one of the following: (1) repeated episodes of decompensation, each of extended duration; (2) a residual disease that has resulted in such marginal adjustment that even minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement with a need for such an arrangement to continue. 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.02, 12.04. For listing 12.06, the "C" criteria is met if the mental impairment resulted in the "complete inability to function independently outside the area of one's home." 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.06.

On September 6, 2007 Dr. Bogdanovic filled out a check box Mental Impairment Questionnaire in which she indicated that Plaintiff met the paragraph A medical criteria for listing 12.02. Dr. Bogdanovic also documented that Plaintiff met several of the paragraph A criterion for listings 12.04 and 12.06, checking boxes to indicate that Plaintiff suffered from sleep disturbance, feelings of guilt or worthlessness, thoughts of suicide, difficulty thinking or concentrating, persistent disturbances in mood or affect, hyperactivity and motor tension. (TR 66). Dr. Bogdanovic then checked all of the relevant boxes indicating that Plaintiff met the "B" and "C" criteria for listings 12.02 and 12.04, without providing a corresponding explanation for her findings. She did not check the appropriate box indicating that Plaintiff met the "C" criteria for listing 12.06. (TR 69).

The ALJ considered Dr. Bogdanovic's opinion and concluded that her findings that Plaintiff had markedly impaired functioning in the area of concentration, persistence or pace, and continuous periods of decompensation, were not consistent with the clinical findings, the treatment history, or the claimant's level of activities. The ALJ further found that the record did not establish that the

"C" criteria of the listings were present. (TR 15).

Episodes of decompensation "may be inferred from medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system," including hospitalization or placement in a halfway house. 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(C)(4). Although Dr. Bogdanovic checked the box indicating that Plaintiff suffered repeated episodes of decompensation, she did not explain what the episodes of decompensation were. The medical records, including Dr. Bogdanovic's treatment notes from May 2007 through February 2008, fail to show that Plaintiff experienced repeated exacerbations or increases in symptoms with a corresponding loss of adaptive functioning. Nor do the medical records show that Plaintiff experienced repeated episodes where he required increased treatment, a less stressful situation, or a more structured support system over an extended period of time. While Plaintiff's medications were routinely adjusted, the record indicates that this was primarily caused by Plaintiff's non-compliance with his medication regiment. Indeed, Dr. Bogdanovic noted that Plaintiff reported improved concentration and decreased hyperactivity on medication. The ALJ properly concluded that Dr. Bogdanovic's September 6, 2007 opinion showing that Plaintiff experienced periods of decompensation was not consistent with the medical record. Without evidence of repeated episodes of decompensation or evidence of a second "marked" impairment, the Paragraph B criteria for listings 12.02, 12.04, and 12.06 have not been met.

Likewise, the record as a whole does not demonstrate that the "C" criteria have been met for listings 12.02, 12.04, or 12.06. The evidence demonstrates that Plaintiff at times lived with his mother and at other times lived with a friend. He also spent time at his fiancee's house. There is no evidence to suggest that Plaintiff had difficulty adjusting to his changing living environment.

13

Plaintiff engaged in light household chores, some grocery shopping, cooking, and he drove a car. He also took appropriate care of his personal hygiene. He had limited but positive interactions with his neighbors, socialized with a friend and with relatives, and in the time since he became disabled was able to both initiate and nurture a relationship with his fiancee. The ALJ properly concluded that the record did not establish that the "C" criteria of the listings were present.

The Court finds that there is substantial evidence supporting the ALJ's decision that Plaintiff did not meet the listings for 12.02, 12.04, and 12.06.

**2. Whether The ALJ's Finding That Plaintiff Could Still Do Some Jobs Is Supported By Substantial Evidence**

Plaintiff contends that evidence of his disabling symptoms was fully substantiated in the record, testimony and opinion of Dr. Bogdanovic. He further argues that the ALJ failed to consider evidence showing that the Plaintiff had diminished intellectual abilities, and failed to consider the opinions of Dr. Martin, Dr. Bielawski, Dr. Pestrue, and Dr. Casten.

The ALJ found that the medical evidence documented the existence of impairments that can reasonably be expected to produce symptoms such as pain, depression, and anxiety, but that evidence of disabling symptoms was not fully substantiated. The ALJ concluded that Plaintiff was capable of performing light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) that provides the opportunity to alternate position for a few minutes approximately every 45 minutes. The Plaintiff should not climb ladders, ropes, or scaffolds. He can occasionally climb stairs and stoop, but should not be required to kneel, crouch or crawl. He should not operate controls with the left foot or leg. He is limited to simple, routine, repetitive work. The job should not require more than first grade reading skills or more than third grade arithmetic skills. The Plaintiff should not

14

need to make independent judgments about work tasks. He cannot perform work that involves confrontation or negotiation. He can tolerate superficial contact with co-workers and supervisors, but should not be required to interact with the general public.

Plaintiff argues that the ALJ erred in failing to consider the opinions of Dr. Martin, that Plaintiff suffered from degenerative changes in his lumbar spine with possible sciatica and hip irritation. He also argues that the ALJ failed to consider the opinion of Dr. Bielawski that Plaintiff had significantly diminished left hip range of motion, and the opinion of Dr. Casten that Plaintiff suffered from chronic pain, numbness, and tingling in his extremities, and was limited in comprehension, following simple instructions, reading, writing, and social interaction.

Contrary to Plaintiff's assertions, the ALJ properly considered the evidence and formulated the residual functional capacity accordingly. The ALJ accounted for Plaintiff's physical and mental impairments and related limitations in formulating the residual functional capacity finding. The ALJ's residual functional capacity finding limited Plaintiff to simple, routine, repetitive work which would not require more than first grade reading skills or more than third grade arithmetic skills, and which would not require Plaintiff to make independent judgments about work tasks. Additionally, Plaintiff was limited to superficial contact with co-workers and supervisors, and no interaction with the general public. With regard to Plaintiff's physical limitations the ALJ discussed that Plaintiff has not had surgery since 1999, has decreased range of hip motion, but full strength, a normal gait, and he walks without the use of an assistive device - all findings which are substantiated in the record. (TR 16).

With respect to Dr. Pestrue's opinion, the ALJ considered cognitive limitations and diagnoses which were consistent with Dr. Pestrue's treatment record. As previously stated, Dr.

15

Pestrue found that Plaintiff had first grade reading and spelling skills, and a third grade ability in mathematics, and the ALJ properly considered these limitations in the residual functional capacity. Although the ALJ did not rely on Dr. Pestrue's assigned GAF score of 48, she was not obligated to do so. *See Kennedy v. Astrue*, 247 Fed. Appx. 761, 766 (6th Cir. 2007) (quoting *DeBoard v. Comm'r*, 211 Fed. Appx. 411 (6th Cir. 2006) ("the Commissioner 'has declined to endorse the [GAF] score for 'use in the Social Security and SSI disability programs'").

Finally, the ALJ referenced the September 2007 findings of Dr. Bogdanovic and Dr. Casten, finding that there was a lack of support for their conclusions in the record. The ALJ pointed out areas where the doctors' opinions regarding Plaintiff's limitations were inconsistent with other evidence in the record. (TR 15-16).

In applying the fifth step of the analysis, and relying on the testimony of a vocational expert, the ALJ concluded that the Plaintiff would be able to perform the jobs of assembler at the light exertional level, and assembler and inspector at the sedentary level. (TR 17). The ALJ's findings with respect to Plaintiff's physical and mental impairments and ability to engage in work are supported by substantial evidence in the record. Even if substantial evidence would also support the opposite conclusion, the Commissioner's decision must be affirmed. *See Kinsella*, 708 F.2d at 1059; *Her*, 203 F.3d at 389-90.

## VI. **CONCLUSION**

The ALJ's decision to deny benefits is supported by substantial evidence and is within the range of discretion allowed by law. Defendant's Motion for Summary Judgment (docket no. 17) should be granted, that of Plaintiff (docket no. 14) denied and the instant Complaint dismissed.

**REVIEW OF REPORT AND RECOMMENDATION**:

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: September 15, 2010                    s/ Mona K. Majzoub
                                             MONA K. MAJZOUB
                                             UNITED STATES MAGISTRATE JUDGE

### PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: September 15, 2010                    s/ Lisa C. Bartlett
                                             Case Manager

17